THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM THOMAS COWHERD, Defendant-Appellant.

Fourth District   No. 14743

Opinion filed August 18, 1978.

MILLS, P. J., concurring in part and dissenting in part.

Richard J. Wilson and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Thomas W. Gendry, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction upon jury verdict of the offense of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2 ), and the sentence of 10 to 30 years imposed.

Upon appeal defendant argues that it was error for the court (1) to fail to instruct *sua sponte* that an intent to permanently deprive the victims of property is an essential element of the offense; (2) that appointed counsel representing defendant and Martha Tvo, also charged for this offense, could not supply effective representation of the fact by reason of a conflict of interest between the defendants; (3) that the trial court imposed a more severe sentence because of a stated belief that defendant committed perjury, and that defendant's more severe sentence was disparate in comparison with those co-defendants who pleaded guilty.

The robbery of a jewelry store in Decatur, Illinois, occurred in the late afternoon of February 3, 1977. Three of the several employees who were held by the robbers testified for the prosecution and identified defendant as being the leader of the three robbers who entered the store and testified to his threats to shoot one or more of the persons present if gems and money were not produced. Jo Don Tvo testified for the prosecution that he planned the robbery and waited outside the store in an automobile during the robbery. He testified that he instructed the defendant and two others as to the plan for carrying out the robbery; that he received the loot from defendant and disposed of it through a fence, and that he, Tvo, paid defendant $6800 as his share of the proceeds. Defendant testified that he was in Indianapolis on the date and at the time in evidence.

This trial commenced on September 28, 1977. The opinion in *People v. White* (1977), 67 Ill. 2d 107, 365 N.E.2d 337, was published on June 1, 1977. In *White,* defendant asserted at a bench trial that he was so intoxicated that he could not form an intent to commit the offense of armed robbery. The trial court admitted evidence of defendant's intoxication, but held that voluntary intoxication was not a defense to the crime. The appellate court held that "intent is not an element of the crime of robbery." 67 Ill. 2d 107, 109, 365 N.E.2d 337, 338.

The supreme court examined the history of the case and statutory law, and stated:

"We hold that the appellate court erred and that the intent to deprive the person from whom the property is taken permanently of its use or benefit is an element of the crimes of robbery and armed robbery." 67 Ill. 2d 107, 117, 365 N.E.2d 337, 342.

Examining the record upon the issue of intoxication, the *White* opinion concluded:

"We find insufficient evidence in this record from which the trier of fact could find that defendant's intent to steal money from the victims, or in their presence, with force and intimidation, while armed with a dangerous weapon, was negated. The judgment of the appellate court is accordingly affirmed." 67 Ill. 2d 107, 120, 365 N.E.2d 337, 344.

Here, the jury was instructed upon the issues in the offense of armed robbery in the language of IPI Criminal No. 14.02. No objection was made by defendant and no other instruction upon issues was tendered by him. The issue was not raised in defendant's post-trial motion.

Supreme Court Rule 451(c) provides for the tendering and giving of instructions in criminal cases, and states:

"[S]ubstantial defects are not waived by failure to make timely objections thereto if the interests of justice require." (Ill. Rev. Stat. 1977, ch. 110A, par. 451(c).)

Supreme Court Rule 615(a) provides that:

"Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. Rev. Stat. 1977, ch. 110A, par. 615(a).

In *People v. Chupich* (1973), 53 Ill. 2d 572, 295 N.E.2d 1, defendant was charged with the unlawful sale of narcotics. The prosecution conceded that knowledge "of the substance was an element of the offense." The jury was instructed in the language of the statute which did not include such element of knowledge. Defendant tendered no instruction which stated or included the element of knowledge, but argued on appeal that the omission required reversal.

The opinion noted that where knowledge of the nature of the substance was the subject of genuine dispute, the failure to instruct is reversible error, but:

"Other cases have held that where the defendant's knowledge is proved beyond a reasonable doubt, failure to instruct the jury on this element was harmless error. [Citations.]" 53 Ill. 2d 572, 579, 295 N.E.2d 1, 6.

■■ Here, the lack of intent to permanently deprive the victims of

property cannot be seriously argued. The record shows that defendant sought out the man who could find and obtain the gems and jewelry at the store, that defendant delivered the loot to Tvo who fenced it, and that defendant subsequently received $6800 as his share of the proceeds of the robbery. As in *White,* the fact of the requisite intent was not negated before the trier of fact, and as in *Chupich,* the failure to instruct may be considered to be harmless error.

By supplemental brief defendant here raises the issue of effective assistance of appointed counsel arising from the fact that defendant's counsel also was appointed to represent Martha Tvo, who was also charged with the robbery.

Defendant was arraigned on August 11, 1977. His trial commenced on September 28, 1977. Martha Tvo was convicted at a jury trial on August 16, 1977, and was sentenced on September 2, 1977. Martha Tvo did not testify at defendant's trial or at his sentencing hearing, although she did testify that defendant participated in the armed robbery at her own trial. It is contended that the interests of defendant were conflicting because defendant testified at his subsequent trial to an alibi. It is significant to note that the testimony of defendant and Martha Tvo respectively was never considered by the same trier of fact upon the issue of guilt, and in the trial of defendant there was no occasion for defendant to cross-examine Martha Tvo. At the time of defendant's trial, Martha Tvo had been sentenced and her representation by appointed counsel terminated.

To support his claim of the conflict of interest defendant cites *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67, where defendant's appointed counsel simultaneously represented the administrator of an estate which might be enlarged by the fact of defendant's conviction of murder. By reason of such contemporaneous representation, it was almost inevitable that counsel's actions in behalf of one client would be detrimental to the interest of the other. The court concluded that there was a *per se* conflict of interest arising from counsel's commitment to others.

Defendant cites *Holloway v. Arkansas* (1978), ___ U.S. ___, 55 L. Ed. 2d 426, 98 S. Ct. 1173. The focus of that opinion was directed to circumstances wherein counsel represented three co-defendants who were tried at the same time. Prior to trial and during trial itself, counsel protested that the interests of the several co-defendants conflicted, that he had been provided with privileged information concerning the clients which created a conflict of interest between them, and that it was impossible for him to adequately represent the three at one trial. Defendants testified to individual alibis and counsel again protested that he was unable to interrogate any of the defendants. The trial court

concluded that there was no conflict of interest since neither co-defendant had incriminated the other.

The facts are comparable to those in *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457, where prior to the appointment to represent a co-defendant, counsel protested and asserted to the court that the co-defendant had antagonistic defenses which would interfere and inhibit his representation of his client.

The *Holloway* opinion stated:

> "One principle applicable here emerges from Glasser without ambiguity. Requiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel." (_____ U.S. _____, _____, 55 L. Ed. 2d 426, 433, 98 S. Ct. 1173, 1178.)

The specific holding in *Holloway* is stated:

> "We hold that the failure, in the face of the representations made by counsel weeks before trial and again before the jury was empanelled, deprived petitioners of the guarantee of 'assistance of counsel.' " _____ U.S. _____, _____, 55 L. Ed. 2d 426, 434, 98 S. Ct. 1173, 1179.

Here there was no common trial of co-defendants, no representations of a conflict of interest by counsel prior to trial are found, nor was it suggested in the post-trial motion. The issue was raised by supplemental brief filed subsequent to the opinion of *Holloway v. Arkansas*.

We have examined the record to ascertain whether a conflict of interest arises in fact. The record shows that there was no occasion when counsel faced the problem of challenging the admission of testimony which might favor one client but injure another. The record shows that the trial of Martha Tvo commenced almost immediately after defendant's arraignment on August 11. This supports a conclusion that counsel was not inhibited in any way in plea negotiations in behalf of this defendant, for it is reasonable to conclude that the trial of Martha Tvo had been set at the time of defendant's arraignment and that plea negotiations in her behalf had been futile or not attempted. It is not apparent how the plea negotiations in behalf of defendant could be impaired by the representation of Martha Tvo when her trial had been completed.

■■ It is argued that the fact of dual representation might interfere with counsel's conduct at the sentencing hearing of the co-defendants. It is clear that Martha Tvo had been sentenced prior to the commencement of defendant's trial and that, in fact, counsel for defendant presented vehement argument at his sentencing hearing upon the disparate sentences

imposed upon defendant with regard to both Martha Tvo and the others charged who had pleaded guilty. The several sentences and the general comparisons of the respective criminal records of the co-defendants were stated into the record at defendant's sentencing hearing. We conclude that the record negates the fact of a conflict of interest which had the effect of denying defendant effective representation of counsel.

At the sentencing hearing, the trial court made the following comment:
"In imposing a sentence, I want to make it as clear as I can that the sentence is not being raised because you took a trial. You are certainly entitled to a trial. I don't think anybody is entitled to take under oath the witness stand and deny any participation, which is equivalent to perjury, that you weren't even here, when I find that the jury has found you were there, that you did participate. * * * [I]n imposing the sentence, it is not on the basis that you took a trial [*sic*], that you testified. You are entitled to that, but nobody is entitled to lie under oath."

A trial court may properly consider, in sentencing, a defendant's *admission* that he committed perjury in his testimony. (*People v. Busch* (1973), 15 Ill. App. 3d 905, 305 N.E.2d 372.) However, in the present case, defendant did not admit to perjury.

The prosecution has filed the opinion in *United States v. Grayson* (1978), ___ U.S. ___, ___ L. Ed. 2d ___, 98 S. Ct. 2610, as supplemental authority. In imposing sentence in *Grayson*, the trial court stated:
"[I]t is my view that your defense was a complete fabrication without the slightest merit whatsoever. I feel it is proper for me to consider that fact in the sentencing, and I will do so." ___ U.S. ___, ___, ___ L. Ed. 2d ___, ___, 98 S. Ct. 2610, 2613.

It was argued in the Supreme Court that the sentence was enhanced by imposing punishment upon an offense, perjury, for which defendant had not been "tried or convicted by due process" and that permitting such consideration of perjury would "chill" the right of defendant to testify in his own behalf. The judgment of the Court of Appeals vacating the sentence was reversed by a divided court and the cause was remanded for the reinstatement of the sentence.

A critical factor in the *Grayson* opinion is the Federal rule stated as both case and statutory law that there is no limitation upon the information concerning the background, character, and conduct which a court of the United States may receive and consider for the purpose of imposing sentence. 18 U.S.C. §3777 (1976), provides:
"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and

consider for the purpose of imposing an appropriate sentence."
Citing *Williams v. New York* (1949), 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 57, the *Grayson* opinion noted that it was not unconstitutional for the sentencing judge to consider criminal conduct for which defendant had not been tried and convicted.

■■ The Illinois courts have long followed a contrary rule to hold that evidence of arrests or other charges which did not result in conviction is not admissible at a hearing in aggravation and mitigation for purpose of sentence. *People v. Riley* (1941), 376 Ill. 364, 33 N.E.2d 872; *People v. Jackson* (1968), 95 Ill. App. 2d 193, 238 N.E.2d 196; *People v. Kelly* (1976), 36 Ill. App. 3d 476, 344 N.E.2d 50.

Here, the record indicates that the sentence was enhanced by reason of the trial court's conclusion that defendant committed perjury at his trial. As we perceive it, such enhancement violates the rule stated in *Riley* which holds that evidence of criminal conduct for which defendant is not tried and convicted is not competent or admissible at a sentence hearing.

■■ This court, in *People v. White* (1971), 130 Ill. App. 2d 775, 267 N.E.2d 129, determined that the enhancement of a sentence for perjury perceived by the trial court had the effect of denying the right to jury trial upon such offense of perjury. (Accord, *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 358 N.E.2d 649.) While the opinion in *Grayson* disavows such conclusions as constitutional violations, we conclude that the Illinois rule prohibits such enhancement of sentence for perjury perceived by the judge during the course of the trial.

Defendant argues that the trial court abused its discretion because he imposed a more severe sentence on defendant than upon the co-defendants who pleaded guilty with the result that he was punished more severely for going to trial rather than pleading guilty. The trial court expressly disavowed increasing the sentence by reason of the demand for jury trial, but, in addition to speaking of perjury by defendant the court discussed the seriousness of the offense.

In the context of seriousness of conduct, we note that James Daniels, one of the trio entering the store and dealing with the persons present, was sentenced to 5 to 12 years upon his plea of guilty. Daniels had prior convictions for car theft and voluntary manslaughter. William Harris, who also entered the store and dealt with the victims, was sentenced to 4 to 8 years upon his plea of guilty. He had a conviction for armed bank robbery. Jo Don Tvo planned and organized the robbery and fenced the gems seized. The record shows that he had been convicted of three prior felonies for armed robbery in California and in Michigan, and his plea agreement included pleas and sentences for other armed robberies in

Peoria, Macon, and Champaign counties. Tvo received concurrent sentences of 7 to 15 years which were concurrent with a 10- to 15-year sentence. Martha Tvo, who did not enter the premises robbed, had a prior record for possession of cannabis and received a 6- to 12-year sentence.

This record shows that defendant had one prior conviction for armed robbery with a sentence of 2 years. The trial court's colloquy at the sentencing hearing shows that he concluded that defendant was used as a tool to do the dirty work of Tvo in carrying out the robbery. While the court stated that he was "holding back" on the term of sentence because of the sentences imposed upon the negotiated pleas of the others, he imposed a sentence of 10 to 30 years on this defendant. There is evidence that defendant was the "mouth" which threatened the victims while demanding the money and gems, but his conduct was essentially the same as that of the other participants. Defense counsel raised the issue of the disparate sentence suggested by the State's Attorney at defendant's sentence hearing.

■■ In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the Illinois Supreme Court admonished the reviewing courts not to modify sentences unless there had been a clear abuse of discretion. In the light of the disparate sentence imposed on defendant, and in the light of the court's apparent consideration of defendant's perjury at the time of sentence, we conclude that the trial court abused its discretion.

Supreme Court Rule 615(b)(4) authorizes this court to modify a sentence imposed in the trial court. For such reason the conviction is affirmed and the sentence is modified to 7 to 15 years in prison. *People v. Greenlee* (1976), 44 Ill. App. 3d 536, 358 N.E.2d 649.

Conviction affirmed; sentence modified.

CRAVEN, J., concurs.

Mr. PRESIDING JUSTICE MILLS, concurring in part and dissenting in part:

The conviction should indeed be affirmed and I concur.

I part ways, however, with the majority on the issue of the sentence. I would remand for resentencing.

Obviously, the trial court relied—in great measure—on the mistaken element of "perjury" in determining the sentence imposed. Since that element has evaporated and was not in fact existent, the trial judge should have an opportunity to sentence anew.

Wherever possible, a reviewing court should heed the *caveat* of

*Perruquet*, be reluctant to superimpose its concept of a fair sentence upon a lower court whose duty and discretion it is to impose a just sentence, and allow the trial judge to correct his own mistakes.