**UNITED STATES**

v.

**Airman First Class Michael A. WARREN, FR 530–54–6072 United States Air Force.**

**ACM S24904.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 21 Aug. 1979.

Decided 2 Dec. 1980.

———

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter, Captain Richard O. Ely, II, and Captain Allen C. Rooten, USAFR.

Before EARLY, ARROWOOD and KASTL, Appellate Military Judges.

**DECISION**

**PER CURIAM:**

Accused was tried by special court–martial, consisting of members, for two offenses of transferring methamphetamine, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. Despite pleas of not guilty, he was nonetheless found guilty. His sentence, as approved by intermediate authorities, consists of a bad conduct discharge, confinement at hard labor for three months, forfeiture of $279.00 per month for three months, and reduction to airman basic.

Appellant argues that the military judge erred when he failed to instruct the court members, *sua sponte*, to ignore trial counsel's sentencing arguments. The issue arose in this fashion: At the trial on the merits, the credibility of the witnesses was crucial. A Special Agent of the Air Force Office of Special Investigations pinpointed accused as the individual who had transferred methamphetamine, as charged. Various defense witnesses, including the accused, then testified: they denied the transaction had occurred and established an alibi for the time in question. The court members nonetheless found accused guilty of both offenses. To the prosecution, the verdict indicated the court members necessarily had determined that accused had lied under oath. Accordingly, trial counsel argued during pre–sentencing procedures as follows:

> And it also needs to be demonstrated to this individual that lying about it is going to subject him to severe punishment. So I would ask you to separate this man from the service punitively. And also give him the maximum period of confinement, which the judge will tell you is six months. Six months in an Air Force confinement facility probably will do this man a lot of good. Let him sit in there and think about what he has done at this point in time in his life. Maybe that will teach him the importance of telling the truth and not being involved in drug of-

fenses, especially in dealing drugs.... . we have seen in the case in chief what kind of individual this man is. He is capable of getting up there and lying on the witness stand.

On the facts of this case, we find that the military judge did not err in failing to instruct the court members, *sua sponte*, to ignore trial counsel's argument. *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States v. Young*, 5 M.J. 797 (N.C.M.R.1978), pet. denied 6 M.J. 100, N.C.M.R.

We have considered the other errors raised by appellant and resolve them against him. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

KASTL, Judge (concurring):

I agree that trial counsel's argument was legally permissible in this particular case. Under any fair reading of the record, accused told a "cock–and–bull story" in his sworn testimony; it was not improper for the court members to conclude that accused had lied and to consider such factor in fashioning a sentence.

In my judgment, such sentencing considerations may be permitted in only a limited range of cases. Upon slightly different facts, I would not hesitate to reach a contrary result.

As a possible aid for those facing such problems in the future, I will set forth: (a) relevant Federal authorities; (b) analysis of the difficulties of applying Federal civilian law to our court–martial system; and (c) suggestions as to factors which might well be considered in the initial decision whether to permit such argument *vel non*.

*Relevant Authority*

This is a case of first impression in our court. True, several cases already have addressed the matter of a prosecutor's argument *on the findings* which characterizes an accused's testimony as perjury or lies. See, for example, *United States v. Johnson*, 1 M.J. 213 (C.M.A.1975); *United States v. Pettigrew*, 19 U.S.C.M.A. 191, 41 C.M.R. 191 (1970); *United States v. Doctor*, 7 U.S.C. M.A. 126, 21 C.M.R. 252 (1956); *United States v. Arnold*, 6 M.J. 520 (A.C.M.R. 1978).[1]

None of these cases dealt with a *sentencing* argument which, in effect, urges the members to "give the accused a little something extra" as punishment for lying to them.[2]

Is such a consideration Constitutionally permissible? Yes. This issue was laid to rest by the United States Supreme Court in *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). In *Grayson*, the Federal district court judge sentencing the defendant had expressly stated that he found the defense "a complete fabrication" and that he would consider that factor in sentencing. By a 6–3 majority, the Court held that defendant's lying properly could be considered probative as to his prospects for rehabilitation and hence relevant to sentencing. The Court further noted that such consideration did not violate due process as being punishment for uncharged perjury; neither did it chill a defendant's Constitutional right to testify in his own behalf.

The Court noted that it had granted certiorari because a conflict existed between circuits—eight circuits agreed that such matters could be considered on sentencing, two circuits did not. *Grayson* now has been

---

1. Military courts, like civilian ones, appear to weigh cases on an ad hoc basis, evaluating for temperateness and justification the prosecution's argument that the defendant lied. See generally Annot., *Error–Statements as to Perjury*, 127 A.L.R. 1385, 1415, 1421 (1940).

2. Today, we surface a consideration which undoubtedly has existed subconsciously in the past. In my own experience, two unwritten rules come out of this area. First, many judge advocates feel that an accused enjoys an unwritten license to lie at trial to save himself. Second, many believe an accused pays a spe-

followed in numerous instances paralleling the case at bar.[3]

Thus, *it is Constitutionally permissible* to evaluate in sentencing the fact that an accused apparently lied at trial. Yet the mere fact that to consider the accused's veracity is permitted under the Constitution does not prevent this court from developing a narrower formulation, if such is in better consonance with our military justice system.[4]

*Shall Grayson Apply in Courts–Martial?*

At the outset of any analysis of the question, we must note that, for present purposes, Federal civilian trials differ markedly from courts–martial in at least four basic areas. We ought to weigh those differences to decide if the *Grayson* approach is appropriate, feasible, and fair within our system.

1. Who decides? Sentencing in Federal (and most state courts) occurs before a judge sitting alone; he presumably is well experienced in penology.[5] In our military justice system, those not electing trial by judge alone will have their sentence decided by lay members who–though quick–witted and fair–are untrained in penology.

2. Specific reasons. In Federal civilian courts, the reasons for an increased sentence generally are spread upon the record; a reviewing court thus can ascertain the degree to which a particular sentence was affected by the falsehood.[6] Before a military court consisting of members, there is no way to ascertain the degree to which accused's prevarication affected the sentence.[7]

3. Is the lie a proper matter for judge and jury, or best left to the convening authority? In Federal civilian courts both the finding and sentencing phase of the trial, adversarial in nature, are continuously superintended by one judge.[8] In the military system, it can be argued that sentencing functions are, in practical effect, divid-

---

cial price on sentencing when a jury believes his defense to be spurious.

3. See, for example, *United States v. Wise,* 603 F.2d 1101 (4th Cir. 1979); *United States v. Rowen,* 594 F.2d 98, 102 (5th Cir. 1979); *United States v. Short,* 597 F.2d 1122 (8th Cir. 1979); *United States v. Martinez–Navarro,* 604 F.2d 1184 (9th Cir. 1979).

4. Illinois, for example, apparently observes a rule prohibiting enhancement of sentences, despite *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1958). See *People v. Cowherd,* 20 Ill.Dec. 344, 63 Ill.App.3d 229, 380 N.E.2d 21, 25 (1978). Cf. *People v. Moody,* 23 Ill.Dec. 689, 66 Ill.App.3d 929, 384 N.E.2d 483 (1978) and *People v. Oravis,* 37 Ill.Dec. 407, 81 Ill.App.3d 717, 402 N.E.2d 297 (1980).

5. Even in most U. S. state courts, the trial judge–not the jury–is responsible for sentencing. Only 13 states permit jury sentencing in non–capital cases. Dawson, *Joint Trials of Defendants in Criminal Cases: An Analysis of Efficiencies and Prejudices,* 77 Mich.L.Rev. 1379, 1393 (1979).

6. Indeed, the Pennsylvania Federal district court judge hearing Grayson's case expressly stated that he would consider defendant's fabrications in assessing an appropriate sentence; the judge stated that he wished to be fair and–should his formulation be improper–appellate authorities would be in a position to reverse.

*Grayson, supra,* 438 U.S. at page 44, 98 S.Ct. at page 2612. Authority for the sentencing power of Federal courts is at Federal Rules of Criminal Procedure, Rule 32(c)(2), 28 U.S.C.A. § 2255. For application, see *Shelton v. United States,* 497 F.2d 156, 159 (5th Cir. 1974). See also the proposed "Criminal Code Reform Act of 1977," sponsored by Senators Kennedy and McClellan. Even without the draft legislation, there may already exist an absolute requirement that such matters be spread upon the record in a *Grayson* –type case. See *Jacobs v. Redman,* 616 F.2d 1251, 1259 (3rd Cir. 1980) and *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Pearce* holds that when a more severe sentence is imposed *upon reconsideration* when an original sentence is set aside, reasons for the increased sentence must affirmatively appear on the record; this insures that constitutional legitimacy can be reviewed on appeal. *Jacobs* appears to extend the *Pearce* requirement to cases where sentence is increased because of a putatively untruthful defendant.

7. Special findings might be used for this purpose by a court–martial composed of a military judge alone. See Manual for Courts–Martial, 1969 (Rev.), paragraph 74*i.*

8. See, for example, *United States v. Hendrix,* 505 F.2d 1233, 1236 (2d Cir. 1974), which attempts to balance all relevant factors.

ed between the military judge or members, on the one hand, and the convening authority on the other hand; that convening authority, it can be contended, enjoys considerable "judicial" powers to modify a sentence based on post–trial evaluation. As a result, accused's lying arguably might be a matter best left to the convening authority to consider–and then, solely on sentence appropriateness–rather than a matter for the judge or members to factor in sentencing.

4. Weighing the falsehood. In Federal civilian trials, the judge who decides on sentence applies sophisticated legal skills to evaluate the seriousness of the falsehood. For example, he properly can gauge whether the lie went to a tangential issue or a major one; whether it was material; and whether it went to an ultimate fact (e. g., "I didn't do it") or to an adjudicative element (e. g., "I [untruthfully] swear under oath that I am innocent because of the following . . . .")[9] A court–martial consisting of members lacks such expertise.

By way of interim summary, what I have said so far is this: It is one thing to permit a trained judge to consider an accused's false testimony in reaching a sentence. Indeed, it was in such a "judge alone" case that the Navy Court of Military Review held that a military court properly might consider the veracity of a testifying accused in arriving at sentence. *United States v. Young*, 5 M.J. 797 (N.C.M.R.1978). See also the recent discussion of matters which might be considered on sentencing in *United States v. Mack*, 9 M.J. 300, 316–317 (C.M.A.1980); the Court cites *Grayson* as an ex-

ample of broad judicial discretion in sentencing. But it is quite a different matter to permit a court–martial consisting of members to do this.

*Factors to Consider at Trial*

When should the prosecution seek to argue that a testifying accused has lied? In turn, when should the military judge permit trial counsel to so argue?[10] In my opinion, there are at least six factors which must be considered before such a prosecution argument is acceptable.[11]

1. Is the statement in question clearly willful?

2. Is it of material importance?[12]

3. Has it occurred in court, under oath?

4. Does the guilty verdict establish absolutely that the accused has lied–not merely that the members chose not to believe the accused? (For example, sometimes matters such as knowledge, intent, or premeditation are essential factors; or perhaps an accused subconsciously has suppressed the event in his own mind; or possibly a defense such as intoxication has been raised. A verdict against an accused who testified to the contrary upon such facts possibly does not raise the spectre of false testimony.)[13]

5. Is the matter to be properly argued–not to increase punishment but merely as a consideration in prospects for rehabilitation? The Supreme Court seems to be saying in *Grayson* that the accused's lying is an element to consider when assessing prospects for rehabilitation; but additional punishment should not be meted out simply for testifying falsely.[14]

9. See *People v. Longuemire*, 87 Mich.App. 395, 275 N.W.2d 12 (1978).

10. Trial counsel should raise the matter in a 39a session, if the intent is to make such an argument.

11. For extremely perceptive approaches to handling this area, see *Commonwealth v. Thurmond*, 268 Pa.Super. 283, 407 A.2d 1357 (1979), where the Pennsylvania court establishes guidelines for when *Grayson* will apply. See also *United States v. Hendrix, supra*.

12. *Commonwealth v. Thurmond, supra*.

13. See *United States v. Moore*, 484 F.2d 1284, 1287 (4th Cir. 1973). Judge Craven's impressive concurring opinion is well worth reading.

14. *Grayson, supra*, 438 U.S. at page 52, 98 S.Ct. at page 2616. An analogy might be drawn to the similar problem of arguing general deterrence–sentences may not be enlarged for purposes of imposing extra punishment when the members believe the accused has lied in his testimony; the key is to individualize each sentence. See *United States v. Lania*, 9 M.J. 100 (C.M.A.1980), *United States v. Varacalle*, 4 M.J. 181 (C.M.A.1978); *United States v. Jenkins*, 7 M.J. 504 (A.F.C.M.R.1979).

6. Do the military judge's instincts and training suggest that this is the proper case in which to apply *Grayson*? Whether to allow prosecution argument that the convicted accused has lied is a matter discretionary with the trial judge. Several factors might bear upon his decision, including: (a) a realistic appraisal of whether this accused's propensity and potential for rehabilitation can be ascertained to any valid degree by the perjury; (b) the judge's personal philosophy as to how far a trial is totally an adversary process and to what degree it is a platform from which a salvageable accused should be expected to express remorse; and (c) his own views on penology and appreciation of the Supreme Court majority's sentencing rationale.[15]

### Conclusion

Mr. Justice Cardozo has addressed the intellectual process which occurs when judges decide cases. He speaks of the uncertainty wherein the conscientious judge says to himself, "I shall never be able to vote in this case either one way or the other." Then, says Cardozo, the fog lifts, mental peace arrives, and the judge reaches a position which becomes "the only possible conclusion, the antecedent doubts merged, and finally extinguished, in the calmness of conviction." [16]

In the present case, I adhere to the position taken by the court. Yet I am not particularly becalmed as to the future consequences of our holding. In short, I am concerned that the particular pet we welcome today into our judicial household will not easily be housebroken.

---

15. See generally the incisive and somewhat critical treatment of the *Grayson* case in Betts, *Note, United States v. Grayson: Inferred Perjury as a Valid Guide to Sentencing,* 41 Pitt.L. Rev. 275 (1980). Betts questions whether the logic of the Supreme Court majority is necessarily persuasive. He comments, in passing, that it is not surprising that one facing a lengthy jail sentence might lie in his own behalf. He also notes that there might be little logical difference between a defendant who pleaded not guilty (though his guilt be patent) and one who actually testified. Betts further suggests that there is no overly–reliable indication that one who lies to save himself is not capable of rehabilitation. See also Note, *Influence of the Defendant's Plea on Judicial Determinations of Sentence,* 66 Yale L.J. 204 (1956). The author, who sent questionnaires on sentencing to every sitting Federal district judge, advises that numerous judges have awarded additional punishment for perjury occurring before them. Cf. *United States v. Hendrix, supra.*

16. Cited in Shaefer, *Precedent and Policy,* 34 U.Chicago L.Rev. 3 (1966).